IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michael Calin Gherman, | ) | No. CV 07-1586-PHX-JAT (ECV) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Dora B. Schriro, et al., | ) | |
| Respondents. | ) | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

**BACKGROUND**

Petitioner Michael Calin Gherman has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. #1. Following a jury trial in Maricopa County Superior Court in 2000, Petitioner was convicted of one count of first degree murder against victim Hans Hummel and one count of second degree murder against victim Michael Poduch. Doc. #14, Exh. A at 3. On December 4, 2000, Petitioner was sentenced to 20 years for the second degree murder conviction and a consecutive term of natural life for the first degree murder conviction. Doc. #1 at 1; Doc. #14, Exh. A at 3.

Petitioner appealed, and on July 6, 2001, through counsel, filed an Opening Brief in the Arizona Court of Appeals. Doc. #14, Exh. B. On January 31, 2002, in a Memorandum Decision, the Court of Appeals affirmed the convictions and sentences. Doc. #14, Exh. A.

On May 8, 2002 Petitioner filed a *pro se* Petition for Review to the Arizona Supreme Court. Doc. #14, Exh. D. The Court denied review on September 20, 2002. Doc. #14, Exh. E.

Following the completion of direct review, Petitioner sought post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure. The trial court appointed counsel to represent Petitioner and on June 3, 2003, Petitioner's counsel filed a Notice of Completion of Post-Conviction Review by Counsel; Request for 45 Day Extension of Time to Allow Defendant to File *Pro Per* Petition for Post-Conviction Relief. Doc. #14, Exh. F. In the notice, Petitioner's counsel indicated that he could find no grounds for relief to raise on Petitioner's behalf. Id. On or about September 30, 2004, Petitioner filed a *pro per* Petition for Post-Conviction Relief. Doc. #14, Exh. G. On April 5, 2005, the trial court, after reviewing the petition, response and reply, found no colorable claims for relief and summarily dismissed the petition. Doc. #14, Exh. H. Petitioner then filed a Petition for Review in the Arizona Court of Appeals which was denied on July 28, 2006. Doc. #14, Exh. I. A subsequent Petition for Review to the Arizona Supreme Court was denied on April 3, 2007. Doc. #14, Exh. K.

On August 16, 2007, Petitioner filed his habeas petition in this court. Petitioner alleges four grounds for relief: 1) that his right to due process under the Fourteenth Amendment was violated when the trial court gave an unconstitutional jury instruction on premeditation; 2) that the prosecutor committed misconduct during the trial in violation of Petitioner's right to due process under the Fifth and Fourteenth Amendment; 3) that he was denied the right to effective assistance of counsel under the Sixth and Fourteenth Amendment during the trial and direct appeal; and 4) that the trial court denied Petitioner's Sixth Amendment right to a jury trial on the aggravating and mitigating factors, and that the trial court failed to direct a verdict on the issue of premeditation. Doc. #1. Petitioner separately filed appendices in support of the petition. Doc. #3. The District Court Judge screened the petition and directed Respondents to file an answer. Doc. #5. Respondents filed an Answer to Petition for Writ of Habeas Corpus on January 7, 2008, and on the following day filed additional attachments. Doc. #13, #14. Petitioner filed a Reply in support of his petition on

March 17, 2008. Doc. #23. On November 14, 2008, this court directed Respondents to file a supplemental answer addressing the merits of ground three of the habeas petition. Doc. #29. Respondents filed a Supplemental Answer on December 16, 2008. Doc. #30. Petitioner then filed a Reply to Respondents' Supplemental Answer on February 2, 2009. Doc. #35.

After additional analysis of Respondents' procedural default defense with respect to grounds one, two and four, the court rejected the defense and directed Respondents to file a Second Supplemental Answer addressing the merits of those claims. Doc. #38. Respondents filed a Second Supplemental Answer on April 30, 2009. Doc. #44. On June 15, 2009, Petitioner filed a Reply to Respondents' Second Supplemental Answer. Doc. #47.

The Arizona Court of Appeals summarized the facts of the case as follows:

> On the afternoon of October 11, 1998, Michael Poduch, a Wal-Mart loss prevention officer, stopped Gherman for shoplifting after he left a Wal-Mart store with a television for which he had not paid. Poduch escorted Gherman to the security office inside the store. When Gherman informed Poduch that his wife was still in the store, Poduch arranged to have two female managers stay with Gherman while he went to locate Gherman's wife. After Poduch left the security office, Gherman refused to cooperate with the other employees and fled from the store.
> Once outside, Gherman ran to his vehicle and began driving away. Poduch and Hans Hummel, another Wal-Mart employee, gave chase in Poduch's car. On a couple of occasions, Poduch attempted to cut Gherman off with his car. Each time, however, Gherman was able to take evasive action and get away. Gherman eventually stopped his vehicle in a dirt construction lot several miles away from the Wal-Mart store. After Poduch pulled into the lot after him, Gherman exited his vehicle with a handgun and shot both Poduch and Hummel multiple times as they sat in Poduch's car. Gherman fled from the scene in his vehicle, but later turned himself in to the police.
> Gherman was indicted on two counts of first degree murder. Upon trial to a jury, Gherman advanced a justification defense based on his testimony that he fired his weapon in self-defense after Poduch attempted to grab the gun away from him. The jury found Gherman guilty of first-degree murder with respect to the death of Hummel and guilty of the lesser-included offense of second degree murder for the death of Poduch.

## DISCUSSION

Respondents contend in their supplemental answers that Petitioner's claims fail on their merits. They argue that Petitioner has not satisfied the high standard for habeas relief and that the petition must therefore be dismissed. Petitioner, on the other hand, contends that the state court erred in its handling of his claims and that the facts warrant habeas relief.

**1.    AEDPA Standard of Review**

Under the AEDPA[1], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

"[C]learly established federal law" under § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting Williams, 529 U.S. at 412). "Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of clearly established federal law." Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06.  "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

---

[1] Antiterrorism and Effective Death Penalty Act of 1996.

Thus, the "unreasonable application" clause requires the state court's application of Supreme Court law to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Regarding the unreasonable determination of the facts standard in § 2254(d)(2), AEDPA provides that factual determinations made by a State court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The federal court may not overturn such determinations "absent clear and convincing evidence" that they are "objectively unreasonable[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**2.     Ground One**

Petitioner claims in ground one that the trial court gave an unconstitutional jury instruction on premeditation in violation of his right to due process under the Fourteenth Amendment.[2] He argues that the phrase "a length of time sufficient to permit reflection" is wide open to the personal interpretation of a factfinder and relieves the state of its burden to prove the element of premeditation.[3] He contends, therefore, that the instruction violates the rule set forth in In re Winship, 397 U.S. 358 (1970), which requires proof beyond a reasonable doubt of each element of the offense.

Petitioner raised this claim in his state petition for post-conviction relief. Doc. #14, Exh. F at 7-10. The trial court, without directly addressing this issue, found no colorable claim had been presented and dismissed the petition. Doc. #14, Exh. H. Petitions for review to the Arizona Court of Appeals and the Arizona Supreme Court were summarily denied. Doc. #14, Exh. I, K.

---

[2] The instruction read:
"'Premeditation' means that the defendant acted with either the intention or the knowledge that he would kill another human being, when such intention or knowledge preceded the killing by a length of time sufficient to permit reflection. An act is not premeditated if it is the instant effect of a sudden quarrel or heat of passion." Doc. #14, Exh. J.

[3] Ground one applies to Petitioner's first-degree murder conviction, the only conviction for which the jury found premeditation.

- 5 -

The Supreme Court in In re Winship, 397 U.S. 358, 364 (1970), held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." A habeas petitioner who seeks to demonstrate constitutional error from a jury instruction that quotes a state statute has an "especially heavy" burden. Waddington v. Sarausad, 129 S.Ct. 823, 831 (2009) (citing Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). A petitioner "must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington, 129 S.Ct. at 831 (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)). A mere possibility that the jury misapplied the instruction is not enough; the relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Waddington, 129 S.Ct. at 832 (citing Estelle, 502 U.S. at 72).

The premeditation instruction given in Petitioner's trial tracked the statutory definition of premeditation in A.R.S. § 13-1101(1), with one exception. Unlike Petitioner's jury instruction, the statutory definition also states that "[p]roof of actual reflection is not required...." A.R.S. § 13-1101(1). In 2003, however, the Arizona Supreme Court in State v. Thompson, 204 Ariz. 471, 479, 65 P.3d 420, 428 (2003), disapproved the use of the phrase "proof of actual reflection is not required" in a jury instruction. The Court expressed concern that the phrase might mislead the jury into believing that the State did not have to prove reflection. Thompson, 204 Ariz. at 479, 65 P.3d at 428. Although Petitioner's trial predated this case, that phrase was omitted from Petitioner's premeditation instruction. Doc. #14, Exh. J. Thus, the concern expressed in Thompson has no bearing on this case.

Petitioner provides no support, beyond mere speculation, that the jury was confused by the phrase "a length of time sufficient to permit reflection" in the premeditation instruction. Petitioner points to a question submitted by the jury as evidence of confusion. But the question related to the last sentence of the premeditation instruction, not the phrase that Petitioner is challenging. Doc. #3, Appx. F. The language that Petitioner challenges

comes directly from the state premeditation statute. Petitioner, therefore, has an "especially heavy" burden to establish constitutional error. He has not met that burden. Petitioner has shown neither that the instruction was ambiguous nor that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.

By finding that Petitioner failed to raise a colorable claim in his state petition for post-conviction relief, the state court necessarily found no constitutional error in the premeditation jury instruction. Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. Petitioner having failed to satisfy the standard for habeas relief on this claim, the court will recommend that ground one be denied.

**3.     Ground Two**

Petitioner alleges in ground two that the State's attorney engaged in prosecutorial misconduct during the closing argument and other points in the trial. Petitioner alleges that the prosecutor's conduct violated his right to due process and a fair trial under the Fifth and Fourteenth Amendment.

Petitioner raised this prosecutorial misconduct claim in his state petition for post-conviction relief. Doc. #14, Exh. F at 11-18. The trial court did not directly address the issue but found that no colorable claim had been presented and dismissed the petition. Doc. #14, Exh. H. Petitions for review to the Arizona Court of Appeals and the Arizona Supreme Court were summarily denied. Doc. #14, Exh. I, K.

The Supreme Court set forth the constitutional standard for prosecutorial misconduct claims in Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Darden v. Wainwright, 477 U.S. 168, 180-81 (1986). The Court explained in Darden that "undesirable or even universally condemned" remarks by a prosecutor are insufficient to show a constitutional violation. Darden, 477 U.S. at 180-81. Rather, the court must ask whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (quoting Donnelly, 416 U.S. 637, 643). In Darden, the Supreme Court

1  noted that the prosecutor made several "offensive comments" that "undoubtedly were
2  improper." 477 U.S. at 180. Among other things, the prosecutor referred to the defendant
3  as an animal who should not be out of his cell without a leash on him. Id. at 181. The
4  prosecutor also said he wished someone would have blown the defendant's head off. Id. The
5  Court explained that jurors were instructed to base their decisions on the evidence and that
6  the lawyers' arguments were not evidence. Id. at 182. As a result, the Court concluded that
7  the prosecutor's comments did not deprive the defendant of a fair trial. Id. at 181.

8  Here, Petitioner challenges several comments made by the prosecutor during the trial.
9  He first claims that the prosecutor mischaracterized the testimony of two witnesses who
10 observed part of the car chase between the victims and Petitioner. Doc. #1, Memorandum
11 at 11-18. Next, he claims that the prosecutor improperly argued that Petitioner lured the
12 victims into the construction lot to kill them. Doc. #1, Memorandum at 18-19. Petitioner
13 further claims that the prosecutor's comments on his character were improper and prejudicial.
14 Doc. #1, Memorandum at 20-21. Finally, Petitioner contends that the prosecutor improperly
15 alleged he had shoplifted a television from Wal-Mart even though he was never charged with
16 that offense. Doc. #1, Memorandum at 21-30.

17 The court has reviewed each of Petitioner's alleged claims of prosecutorial
18 misconduct and the excerpts from the record cited by Petitioner to support those claims.
19 Nothing presented by Petitioner comes close to establishing a trial so infected with unfairness
20 as to make the resulting conviction a denial of due process. The trial court clearly instructed
21 the jury that they were the sole judges of the facts and that what the lawyers said was not
22 evidence. Doc. #44, Exh. R at 1. Moreover, a "prosecutor may argue reasonable inferences
23 from the evidence presented...." Menendez v. Terhune, 422 F.3d 1012, 1037 (9th Cir. 2005).
24 The prosecutor here did nothing more than argue reasonable inferences from the evidence
25 and the jury was left to reach its own determination of the facts.

26 By finding that Petitioner failed to raise a colorable claim in his state petition for post-
27 conviction relief, the state court necessarily found no constitutional error in the prosecutor's
28 conduct at trial. Petitioner's arguments here fail to demonstrate that the state court's decision

- 8 -

was contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. The court will therefore recommend that the claims in ground two be denied.

**4.     Ground Three**

Petitioner alleges in ground three that his lawyer at trial and during the direct appeal provided ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendment. Petitioner contends that his lawyer failed to investigate the blood evidence on Petitioner's gun; failed to seek DNA tests on the slug retrieved from inside the door panel on the passenger side; failed to investigate Petitioner's possible mental impairment at the time of the shooting; failed to investigate the shooting scene and call defense witnesses to support Petitioner's self-defense assertion; and failed to object to the prosecutor's misconduct or raise it as an issue on direct appeal.

Petitioner raised these ineffective assistance of counsel claims in his state petition for post-conviction relief. Doc. #14, Exh. F,G at 18-30. The trial court did not directly address the issue but found that Petitioner failed to present a colorable claim for relief and, therefore, dismissed the petition. Doc. #14, Exh. H. Petitions for review to the Arizona Court of Appeals and the Arizona Supreme Court were summarily denied. Doc. #14, Exh. I, K.

"It has long been recognized that the right to the assistance of counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. A court is not required to determine if counsel's performance was deficient before considering the prejudice issue. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697.

The undisputed evidence at trial demonstrated that both victims died of multiple gunshot wounds. Doc. #14-6 at 14-15 (R.T. 7/13/00 at 108-109). Among the gunshot wounds inflicted, Mr. Poduch received a fatal shot at the base of his skull that traveled upward and exited from the middle portion of his head on the left side. Doc. #14-6 at 29 (R.T. 7/13/00 at 123). Mr. Hummel received a fatal shot to his left shoulder blade that exited his right upper chest and a fatal shot to his left temporal scalp that exited his right temporal scalp with a slight back to front trajectory. Doc. #14-6 at 41-42 and 45-48 (R.T. 7/13/00 at 135-36 and 139-42). The physical evidence therefore established that the fatal shots to the victims came from behind, evidence that strongly supports the jury's findings of intentional, unjustified killings. In light of the strong evidence of guilt, Petitioner has failed to demonstrate that there is a reasonable probability that, but for his lawyer's alleged errors, the result of the proceeding would have been different. Thus, even without considering whether Petitioner's claims show deficient performance by his lawyer, the court finds that Petitioner's ineffective assistance of counsel claims must fail.

By finding that Petitioner failed to raise a colorable claim in his state petition for post-conviction relief, the state court necessarily rejected Petitioner's claims of ineffective assistance of counsel. Nothing presented by Petitioner here demonstrates that the state court's decision was contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. The court will therefore recommend that the claims in ground three be denied.

**5.     Ground Four**

1   Lastly, Petitioner contends that the trial court denied his Sixth Amendment right to
2   a jury trial on the aggravating and mitigating factors.[4] Petitioner contends that the trial
3   judge's determination of one aggravating factor, and mitigating factors that did not warrant
4   further leniency, resulted in a sentence of natural life in prison without the possibility of
5   commutation or parole. Petitioner claims that because his sentence was greater than the
6   minimum sentence for first degree murder (25 years to life), he was entitled to a jury
7   determination of aggravating factors.

8   Petitioner raised this claim in his state petition for post-conviction relief. Doc. #14,
9   Exh. G at 37. The trial court did not directly address the issue but found that Petitioner failed
10  to present a colorable claim for relief and, therefore, dismissed the petition. Doc. #14, Exh.
11  H. Petitions for review to the Arizona Court of Appeals and the Arizona Supreme Court
12  were summarily denied. Doc. #14, Exh. I, K.

13  Petitioner cites to Ring v. Arizona, 536 U.S. 584 (2002), to support his position. Ring,
14  however, is inapplicable. In Ring, the Court explained that the maximum punishment in
15  Arizona for first-degree murder is life imprisonment. Ring, 536 U.S. at 597. Under Arizona
16  law, the only way that sentence can be increased to a death sentence is if at least one
17  aggravating factor is found beyond a reasonable doubt. Id. Applying Apprendi v. New
18  Jersey, 530 U.S. 466 (2000), the Court held that a jury, not a judge, must find any
19  aggravating factors necessary to exceed the maximum sentence and impose a death sentence.

20  Here, although this was tried as a capital case, the trial court did not impose the death
21  penalty and instead imposed life imprisonment. Doc. #14, Exh. C. Under Ring, because the

---

[4] Petitioner also claims in ground four that the trial court failed to direct a verdict for insufficient proof of premeditation. Doc. #1 at 8. Petitioner presents nothing else in his petition to support this one-sentence claim. He presents a 52 page Memorandum of Points and Authorities in support of his habeas petition but it contains nothing about any claim against the trial court for failing to grant his motion for judgment of acquittal. Moreover, the claim fails to allege a violation of the Constitution or federal law. See 28 U.S.C. § 2254(a) (application must allege that "he is in custody in violation of the Constitution or laws or treaties of the United States."). For these reasons, the court will not consider the claim and will recommend that it be denied.

1 | trial court judge did not exceed the maximum penalty for first degree murder, a jury was not
2 | required to find the aggravating factors. Petitioner's sentence was not imposed in violation
3 | of Ring.

4 | To the extent that Petitioner is making a Blakely claim, it also fails. In Blakely v.
5 | Washington, 542 U.S. 296 (2004), the Supreme Court applied the rule announced in
6 | Apprendi, 530 U.S. at 490: "Other than the fact of a prior conviction, any fact that increases
7 | the penalty for a crime beyond the statutory maximum must be submitted to a jury and
8 | proved beyond a reasonable doubt." The Court explained in Blakely that "the 'statutory
9 | maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on*
10 | *the basis of the facts reflected in the jury verdict or admitted by the defendant*." Blakely, 542
11 | U.S. at 303 (citations omitted) (emphasis in original). Thus, a judge may not impose a
12 | sentence in excess of what the jury's factual findings or the defendant's own admissions
13 | allow. See id. However, in Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005), the Ninth
14 | Circuit held that Blakely does not apply retroactively to convictions that were already final
15 | when it was decided.

16 | Here, Petitioner's Petition for Review to the Arizona Supreme Court on direct review
17 | was denied on September 20, 2002. Doc. #14, Exh. E. The Maricopa County Superior Court
18 | website indicates that the Order of Mandate was then filed on October 28, 2002, thus
19 | signifying the end of direct review. Petitioner's conviction, therefore, was final long before
20 | Blakely was decided on June 24, 2004. Because Blakely does not apply to convictions that
21 | were final before it was decided, it does not apply here.

22 | By finding that Petitioner failed to raise a colorable claim in his state petition for post-
23 | conviction relief, the state court necessarily rejected Petitioner's Ring and Blakely claims.
24 | Nothing presented by Petitioner here demonstrates that the state court's decision was
25 | contrary to or an unreasonable application of Supreme Court law or based on an
26 | unreasonable determination of the facts. For these reasons, the court will recommend that
27 | Petitioner's claims in ground four be denied.

28 | **C.  Conclusion**

Having determined that Petitioner has failed to satisfy the habeas standard for relief for his claims in grounds one, two, three and four, the court will recommend that the petition be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 30th day of September, 2009.

*[signature]*
Edward C. Voss
United States Magistrate Judge