**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Gherman, | ) No. CV 07-1586-PHX-JAT |
| Petitioner, | ) **ORDER** |
| vs. | ) |
| Charles L. Ryan; et al., | ) |
| Respondents. | ) |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus. The Magistrate Judge to whom this case was assigned issued a Report and Recommendation (R&R) recommending that this Court deny the Petition. Petitioner has filed objections to the R&R. In addition to his objections and after the Magistrate Judge issued the R&R, Petitioner filed a motion for appointment of counsel, a motion for discovery, and a request for an evidentiary hearing.

**I.    Factual Background**

As the R&R quoted, the Arizona Court of Appeals summarized the facts of this case as follows:

> On the afternoon of October 11, 1998, Michael Poduch, a Wal-Mart loss prevention officer, stopped Gherman for shoplifting after he left a Wal-Mart store with a television for which he had not paid. Poduch escorted Gherman to the security office inside the store. When Gherman informed Poduch that his wife was still in the store, Poduch arranged to have two female managers stay with Gherman while he went to locate Gherman's wife. After Puduch left the security office, Gherman refused to cooperate with the other employees

and fled from the store.

Once outside, Gherman ran to his vehicle and began driving away. Poduch and Hans Hummel, another Wal-Mart employee, gave chase in Poduch's car. On a couple of occasions, Poduch attempted to cut Gherman off with his car. Each time, however, Gherman was able to take evasive action and get away. Gherman eventually stopped his vehicle in a dirt construction lot several miles away from the Wal-Mart store. After Poduch pulled into the lot after him, Gherman existed his vehicle with a handgun and shot both Poduch and Hummel multiple times as they sat in Poduch's car. Gherman fled from the scene in his vehicle, but later turned himself in to police.

Gherman was indicted on two counts of first degree murder. Upon trial to a jury, Gherman advanced a justification defense based on his testimony that he fired his weapon in self-defense after Poduch attempted to grab the gun away from him. The jury found Gherman guilty of first-degree murder with respect to the death of Hummel and guilty of the lesser-included offense of second degree murder in the death of Poduch.

R&R at 3.

## II. Motion for Appointment of Counsel

"There is no constitutional right to counsel on habeas." *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993). Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances indicate that appointed counsel is necessary to prevent due process violations. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986). "In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Petitioner previously moved for the appointment of counsel, which the Magistrate Judge denied. Doc. #52. This Court agrees that the appointment of counsel in this case is not necessary to prevent a due process violation. Specifically, Petitioner has articulated his claims very well pro se and the claims are not particularly complex. Further, the Court finds Petitioner does not have a likelihood of success on the merits. Thus, the motion for appointment of counsel is denied.

## III. Review of Report and Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [Magistrate Judge's] recommendations to which the parties object.").

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to any claims that Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law"[1] or was based on an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Further, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998). If Petitioner failed to exhaust a claim before the state courts (and is now barred from exhausting the claim resulting in a procedural default of the claim) this Court must decline to reach the merits of that claim unless Petitioner shows cause and prejudice to excuse that procedural default. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). However, "[a]n application for a writ of habeas corpus may be <u>denied</u> on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2)(emphasis added).

In his Petition, Petitioner raised four theories for habeas relief: 1) that the jury instruction on premeditation was inadequate, 2) that the prosecutor committed prosecutorial misconduct, 3) that his attorney was ineffective, and 4) that he should be entitled to

---

[1] In applying federal law the state courts only need to act in accordance with Supreme Court case law. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

1 resentencing under *Ring* and/or *Blakely*. The Court will review the theories on which
2 Petitioner filed an objection de novo.

### A. Jury Instruction on Premeditation

Petitioner argues that the jury instruction on premeditation was unconstitutional and violated his right to due process. R&R at 2 & n.2 (quoting the instruction). The R&R then notes that the instruction given by the trial court tracks the Arizona statutory definition of premeditation. R&R at 6. The R&R recounts the law governing this claim as follows:

> A habeas petitioner who seeks to demonstrate constitutional error from a jury instruction that quotes a state statute has an "especially heavy" burden. *Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009).... A petitioner, "must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington*, 129 S.Ct. at 831.... A mere possibility that the jury misapplied the instruction is not enough; the relevant question is, "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." *Waddington*, 129 S.Ct. at 832.

R&R at 6.

Petitioner does not dispute this recounting of the governing law. Instead, in his objections, Petitioner essentially argues that there was insufficient evidence to support the jury finding premeditation. Objections at 4-6. Thus, Petitioner concludes that because, in his opinion, there was insufficient evidence of premeditation for him to be convicted of first degree murder which requires premeditation, yet he was nonetheless convicted of first degree murder, the premeditation instruction must have been inadequate. Objections at 6 (Petitioner states: "In as much that there was no evidence that Petitioner reflected between shots, ... [coupled] with the ambiguity and vagueness of the premeditation instruction regarding the element of reflection, created a reasonable likelihood that the jury [misapplied the instruction]... .").

First, a sufficiency of the evidence claim has not been raised in this case and the Court will not consider an argument that roundaboutly advances this claim for the first time in the

objections.[2] Second, the Court does not find that Petitioner's arguments regarding other possible interpretations of the evidence show that the jury in this case misapplied the instruction. Finally, even if the Court accepted the Petitioner's argument that the jury misapplied the instruction, the Court does not find the instruction to be inadequate, much less so inadequate as to rise to the level of a due process violation. Accordingly, the Petition on this claim will be denied.

### B. Prosecutorial Misconduct

The R&R recounted the law governing prosecutorial misconduct claims in the habeas context as follows:

> The Supreme Court set forth the constitutional standard for prosecutorial misconduct claims in *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). The Court explained in *Darden* that "undesirable or even universally condemned" remarks by a prosecutor are insufficient to show a constitutional violation. *Darden*, 477 U.S. at 180-81. Rather, the court must ask whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (*quoting Donnelly*, 416 U.S. 637, 643).

R&R at 8.

In his objections, Petitioner does not dispute this recounting of the governing law and the Court accepts and adopts this legal framework. Although Petitioner presents his objections in a narrative form, they appear to fall into two general categories: 1) it was prosecutorial misconduct for the prosecutor to discuss Petitioner's removal of a TV from Wal-Mart without paying for it because Petitioner was never charged with shoplifting; and

---

[2] Even if the Court extremely liberally construed the objections as an attempt to amend the Petition to add a sufficiency of the evidence claim, such a request to amend would be denied as untimely. The Petition in this case has been pending since August 2007 and the answer was filed in January 2008; the Court finds any implied request to amend in December 2009, after the R&R was issued, to be too late. *See Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (district court may deny a request to amend that is futile, late, duplicative, or patently frivolous); *see also See Mayle v. Felix,* 545 U.S. 644, 662-64 (2005) (disallowing an amendment to a habeas petition under Federal Rule of Civil Procedure 15(c)(2)'s relation back analysis when the newly added claims would be barred by the Anti-Terrorism and Effective Death Penalty Act's one-year statute of limitations as of the date of the amendment).

2) the prosecutor mischaracterized the evidence in closing argument.

### 1. Shoplifting

Petitioner devotes a large portion of his objections to his argument that he is entitled to relief because he was never charged with shoplifting. Objections at 2 ( Petitioner states: "This Court should grant habeas relief solely on this issue... that [Petitioner] was never charged or indicted for shoplifting, nor prosecuted for theft, even though 50 to 70 percent of his trial revolved around what happened in the Wal-Mart store..." (internal quotations omitted); Objections at 8 (Petitioner further states: "This Court should grant Petitioner's habeas petition on the issue of prosecutorial misconduct, because prosecution's strategy to try Petitioner for a crime absent from the indictment deprived Petitioner of the constitutional right to a jury verdict as to guilt beyond a reasonable doubt."). In sum, Petitioner argues that he was effectively convicted of shoplifting or theft, even though he was never charged with either crime, and that this result violated his due process rights.

The record from the state court is clear that Petitioner was convicted of first degree murder with respect to Mr. Hummel and second degree murder with respect to Mr. Poduch. These convictions are what the jury returned in its verdict and these are the crimes for which Petitioner was sentenced. Further Petitioner does not dispute that he was put on notice that he was charged with and on trial for two homicides. Petitioner's theory that, because he was not charged with any other crimes, it would be prosecutorial misconduct and a due process violation for the prosecutor to mention any surrounding facts that could have lead to additional charges is simply an incorrect statement of the law. Therefore, the fact that the prosecutor elicited testimony and discussed the facts leading up to the killings, including the fact that this incident began when Petitioner allegedly removed a television from Wal-Mart without paying for it, was not prosecutorial misconduct nor a denial of Petitioner's due process rights.[3]

---

[3] Moreover, even if Petitioner had framed this argument in terms of Federal Rule of Evidence 404(b), evidence of "other crimes" is admissible so long as it is not used to show

- 6 -

1    For these same reasons, Petitioner's argument that the detention instruction that was
2 given to the jury violated his due process rights also fails.[4] Objections at 3. It was not a due
3 process violation for the jury to know the facts leading up to the killings, even if those facts
4 show additional crimes with which Petitioner was not charged. Petitioner was not convicted
5 or sentenced on shoplifting or theft; therefore, the fact that he was not charged with either
6 crime does not violate his due process rights.[5]

### 2.     **Misstating the Evidence**

Next, Petitioner argues that the prosecutor misstated the evidence and that the misstatement rose to the level of a denial of due process. As the R&R correctly notes, a prosecutor may argue reasonable inferences from the evidence. R&R at 8 (*citing Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th Cir. 2005)). Petitioner does not dispute this law, but instead argues that the inferences drawn by the prosecutor from the evidence were not reasonable. Objections at 7-8.

Specifically, Petitioner argues that a witness testified that she was unclear what Mr. Poduch had in his hand, but the prosecutor argued that Mr. Poduch had a set of keys in his hand. Objections at 7. However, the actual record shows that the witness in question told Detective Bukowski that it looked like keys were in the victim's hand. Doc. #44-9 at 28, 30.

---

propensity. Evidence that Petitioner stole a television was relevant to explain his interaction with the victims and was not used to show the murders were in conformity with his other act; therefore, even if this argument could have been presented in this manner in this habeas petition, Petitioner would not have obtained relief.

[4]   The detention instruction read to the jury was, "A merchant, or his agent or employee, with reasonable cause, may detain on the premises in a reasonable manner and for a reasonable time any person suspected of shoplifting for questioning by or summoning of a law enforcement officer." Doc. #44-29 at 36. Petitioner does not dispute that he was an "assumed" shoplifter. Objections at 8.

[5]   The purpose of an indictment is to inform a defendant of "what he is accused of doing in violation of the criminal law, so that he can prepare his defense." *U.S. v. Adamson*, 291 F.3d 606, 616 (9th Cir. 2002) (*quoting U.S. v. Tsinhnahijinnie,* 112 F.3d 988, 991 (9th Cir. 1997).

1  Thus, the prosecutor arguing that the victim had keys in his hand was more than a reasonable
2  inference from the evidence, it was actually one version of the evidence. Thus, the Court
3  finds that the prosecutor's arguments were consistent with the evidence in the case and that
4  Petitioner was not denied due process by the prosecutor's arguments.

5  For the foregoing reasons, Petitioner's petition for habeas relief based on prosecutorial
6  misconduct will be denied.

### C. Ineffective Assistance of Counsel

8  Petitioner claims his trial counsel was ineffective. Petitioner's theories of ineffective
9  assistance of counsel fall into two general categories: 1) that counsel's pretrial investigation
10 was inadequate; and 2) that counsel had a conflict of interest that adversely affected his
11 representation of Petitioner.[6]

12 Generally, under *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny, "[a]n
13 ineffective assistance claim has two components: A petitioner must show that counsel's
14 performance was deficient, and that the deficiency prejudiced the defense. To establish
15 deficient performance, a petitioner must demonstrate that counsel's representation fell below
16 an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)
17 (internal citations and quotations omitted). A deficient performance is one that is "outside
18 the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In order
19 to show prejudice, a petitioner "must show that there is a reasonable probability that, but for
20 counsel's unprofessional errors, the result of the proceeding would have been different. A
21 reasonable probability is a probability sufficient to undermine confidence in the outcome."
22 *Strickland*, 466 U.S. at 694. Without specifics that cause the court to have such doubts, a
23 claim of ineffective assistance of counsel must be denied. *See James v. Borg*, 24 F.3d 20,

---

[6] To the extent Petitioner argues a third theory of ineffective assistance — that his counsel was ineffective for failing to object to the prosecutor's alleged misconduct (*see* R&R at 9) — the Court has already determined that Petitioner's claims of prosecutorial misconduct fail. Thus, counsel was not ineffective for failing to make futile arguments. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

- 8 -

26 (9th Cir. 1994) (noting that a petitioner needs to "identify what evidence counsel should have presented" to show his innocence).

### 1.     Adequacy of Counsel's Investigation

> "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. We evaluate the scope of the duty to investigate in light of the context of trial. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

*Hovey v. Ayers,* 458 F.3d 892, 909 (9th Cir. 2006).

In his objections, Petitioner points to three specific factual investigative deficiencies: 1) counsel's alleged failure to investigate the blood evidence on Petitioner's gun; 2) counsel's alleged failure to seek DNA tests on the bullet from the car; and 3) counsel's alleged failure to investigate the shooting scene and call defense witnesses. Objections at 11. Initially, the Court notes that Petitioner offers nothing but his own conclusions and allegations to argue that his counsel did not investigate the case. Petitioner's speculation about what counsel allegedly did not do cannot support an ineffective assistance of counsel claim. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Additionally, even assuming Petitioner is correct about what his counsel failed to do, the Court applies a heavy deference to counsel's judgments. For example, perhaps counsel did not have the blood on Petitioner's gun matched because he was concerned that the results would be inconsistent with Petitioner's self-defense claim and hurt Petitioner's case. The same could be true regarding DNA that may, or may not, have been available off the bullet. Moreover, Petitioner has not shown that the type of forensic evidence Petitioner claims counsel should have obtained was even possible science. Thus, for all these reasons, even assuming Petitioner's allegations regarding counsel's investigation were true, the Court finds, giving counsel's decisions deference, that counsel was not ineffective.

Finally, it does not appear that Petitioner's allegations are all true. For example, Petitioner claims that counsel failed to call witnesses to support Petitioner's self-defense argument. Objections at 11. However, Petitioner himself notes that counsel called an expert

to testify about store policies about pursuit of a shoplifter. Objections at 12. Further, the defense called at least one witness to the incident in the dirt lot, Jennifer Ketcham, which shows, inconsistent with Petitioner's claims, that counsel both investigated and called witnesses. Doc. #44-8 at 50. Therefore, Petitioner's claim of ineffective assistance also fails because it is belied by the record.

Thus, Petitioner's claim of ineffective assistance of counsel based on the alleged inadequacy of counsel's investigation fails because counsel's representation did not fall below an objective standard of reasonableness. Alternatively, Petitioner's claim of ineffective assistance of counsel also fails because Petitioner has failed to show prejudice. As the R&R noted, due to the overwhelming evidence of Petitioner's guilt, Petitioner cannot show prejudice. As the R&R recited:

> The undisputed evidence at trial demonstrated that both victims died of multiple gunshot wounds. [citation omitted] Among the gunshot wounds inflicted, Mr. Poduch received a fatal shot at the base of his skull that traveled upward and exited from the middle portion of his head on the left side. [citation omitted] Mr. Hummel received a fatal shot to his left shoulder blade that exited his right upper chest and a fatal shot to his left temporal scalp that exited his right temporal scalp with a slight back to front trajectory. [citation omitted] The physical evidence therefore established that the fatal shots to the victims came from behind, evidence that strongly supports the jury's finding of intentional, unjustified killings. In light of the strong evidence of guilt, Petitioner has failed to demonstrate that there is a reasonable probability that, but for his lawyer's alleged errors, the result of the proceeding would have been different.

R&R at 10. This Court agrees with the R&R that Petitioner has failed to show prejudice. Therefore, his ineffective assistance of counsel claim does not justify habeas relief.

### 2. Conflict of Interest

Petitioner also argues that his attorney had a conflict of interest. Petitioner's currently pending motion for discovery is specifically to obtain discovery from his former counsel regarding this alleged conflict of interest.

#### a. Discovery Request

##### i. Timely Raising Issues

The Court notes that Petitioner's motion for discovery does not come to this Court in the form of an appeal from an Order of the Magistrate Judge denying Petitioner's request for

discovery. Instead, this motion for discovery is really a supplement to Petitioner's objections to the R&R.

> The district court need not consider contentions not first presented to the Magistrate Judge. *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *Borden v. Secretary of HHS*, 836 F.2d 4, 6 (1st Cir. 1987); *Kirk v. Meyer*, 279 F.Supp.2d 617, 619 (collecting cases). Those cases deal with principle claims omitted from the petition and sought to be raised first in the objections to the report and recommendation. This case deals with a factual contention ... not presented to the Magistrate Judge but which plainly was called for by Respondents' answer. The purpose of requiring factual contentions to be presented first to the Magistrate Judge fully applied here.

*Vera v. McDaniel*, 2007 WL 2410330, *1 (D. Ariz. 2007). Thus, because Petitioner failed to raise this discovery request with the Magistrate Judge, the Court will deny the request for discovery as untimely.

### ii. When Discovery is Available

Moreover, even if this Court considered the substance of Petitioner's request for discovery, Petitioner has not shown that discovery is warranted in this case.

> A habeas petitioner is not entitled to discovery as a matter of ordinary course. *E.g., Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery in habeas actions under section 2254 is governed by Rule 6 of the Rules Governing Section 2254 Cases ("Rule 6"), which provides:
> (a) Leave of court required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.
> (b) Requesting discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.
> The good cause requirement of Rule 6 is satisfied where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *Bracy*, 520 U.S. at 908-09.

*James v. Adams*, 2009 WL 2905724 (E.D. Cal. 2009).

In this case, as discussed at length above, due to the overwhelming evidence of Petitioner's guilt, Petitioner cannot show prejudice as to this theory of ineffective assistance of counsel. Additionally, as will be discussed below, this theory of ineffective assistance of counsel also fails because it was not exhausted in state court and because Petitioner has failed

to establish an actual conflict. Thus, because Petitioner's claim fails for all of these reasons, Petitioner is not able to establish that if the facts were more fully developed he may be entitled to relief. Accordingly, Petitioner's motion for discovery is denied.

### b. Exhaustion

Petitioner is not entitled to relief on his conflict of interest claim because Petitioner has not shown that he exhausted this claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 729-30; 735 n.1 (1991). And, Petitioner has failed to show cause and prejudice to excuse his procedural default of this unexhausted claim. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Petitioner's reason for failing to exhaust this claim as of his 2007 petition is unclear given that Petitioner acknowledges that he became aware of this alleged conflict in 2005. Doc. #66 at 5 (Petitioner states: "In the autumn of 2005, Petitioner learned from another inmate ... who had been represented by [Petitioner's trial counsel's] law firm, that [defense counsel's] mansion had been paid, in part or in full, as a result of a Wal-Mart settlement."). Thus, due to this failure to exhaust, Petitioner's ineffective assistance of counsel claim based on an alleged conflict of interest fails.

### c. Merits of the Conflict of Interest Claim

Even if this Court were to allow an amendment and reach the merits of this claim, Petitioner has not shown ineffective assistance. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

> To establish a Sixth Amendment violation based on conflict of interest, [Petitioner] must show (1) that [his attorney] actively represented conflicting interests; and (2) that this adversely affected [the attorney's] performance. [footnote omitted]... Without a showing of prejudice, a "theoretical" or "potential" conflict is insufficient to constitute actual conflict; instead, [the attorney] must have actively represented conflicting interests.

*Bragg v. Galaza*, 242 F.3d 1082, 1086-87 (9th Cir. 2001).[7]

---

[7] In the *Bragg* case, Mr. Bragg was convicted of killing a woman by shooting her from a moving car. *Id.* at 1085. Mr. Bragg's counsel represented Mr. Bragg's cousin in an unrelated matter. *Id.* Counsel learned during Mr. Bragg's trial that the cousin was a

- 12 -

1. In other words,

> The mere possibility of a conflict of interest is insufficient to support a holding of ineffective assistance. Rather, "a defendant who raised no objection at trial must demonstrate that an *actual* conflict of interest adversely affected his lawyer's performance." [citation omitted] An actual conflict must be proved through a factual showing on the record. [citation omitted] As we have explained, "while we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest... neither can we create a conflict of interest out of mere conjecture as to what might have been shown." [citation omitted].

*Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991).[8]

In this case, Petitioner alleges that in addition to defending Petitioner in his criminal case, his counsel also represented Petitioner's wife in a civil suit against Wal-Mart arising from this same incident. Similar to Petitioner's other theory of ineffective assistance, Petitioner offers nothing other than his own self-serving allegations about what witnesses might say or what might be true to "prove" this second alleged representation. As quoted above, Petitioner claims another inmate told him that his counsel received a fee for settling a case with Wal-Mart. Petitioner has no evidence that this settlement actually occurred, or if it occurred, that it had anything to do with Petitioner's wife. Speculative evidence of this nature is insufficient to establish ineffective assistance of counsel based on an alleged conflict of interest. *See id.* at 455-56 ("Although [Petitioner's] brief on appeal is heavy with speculation as to the contents of [her husband's] unsolicited testimony, her wishful

---

passenger in the vehicle, but because of the conflict, counsel expressed concern that he was precluded from arguing that the cousin, rather than Mr. Bragg, was the shooter. *Id.* The trial court then ruled that Mr. Bragg's attorney had to withdraw from the representation of the cousin so that he could go forward with the defense of Mr. Bragg. *Id.* at 1086. In his habeas petition, Mr. Bragg failed to show that his attorney did not comply with the trial court's order. *Id.* at 1087 & n.2. The Court of Appeals concluded that this was not an "actual" conflict. *Id.* at 1087.

[8] In the *Miller* case, counsel represented both Mrs. Miller in her criminal case and defended her husband in an unrelated criminal case. *Id.* Mrs. Miller alleged in her habeas petition that this conflict caused her attorney to not call her husband as a witness at her trial. *Id.* The Court of Appeals concluded the trial counsel did not have an "actual" conflict of interest. *Id.* at 456.

suggestions cannot substitute for declaratory or other evidence. In the absence of any record evidence as to the existence of an actual conflict of interest, the district court was correct to reject her claim that such a conflict existed.")

Additionally, as the above cases recount, a theoretical conflict is insufficient to establish a conflict of interest. Here, a theoretical conflict is all that is present. Specifically, Petitioner hypothesizes that because his counsel was going to represent someone in a subsequent suit against Wal-Mart, counsel focused a significant portion of Petitioner's trial on what occurred at Wal-Mart. First, applying *Strickland*, the Court will not second guess counsel's trial strategy in which he chose to focus on the pursuit of Petitioner at Wal-Mart rather than on Petitioner shooting two people in a dirt lot. Second, on this record, where there is no evidence that counsel either actually represented Petitioner's wife, nor that such alleged representation in any way prejudiced Petitioner, the Court finds there was no actual conflict of interest. Thus, habeas relief on this theory of ineffective assistance of counsel will be denied.

### D. *Ring/Blakely*

Petitioner did not object to the Magistrate Judge's recommendation on this claim. Accordingly, the Court accepts and adopts the recommendation that relief be denied on this claim. Moreover, even reviewing the claim de novo, the Court agrees with the R&R that Petitioner is not entitled to relief under *Ring* because, although the state tried the case as a death eligible case, the Judge did not sentence Petitioner to death; therefore, the sentence did not violate *Ring*. R&R at 11 (citing *Ring v. Arizona*, 536 U.S. 584, 597 (2002)). Additionally, the Court agrees with the R&R that because Petitioner's conviction became final well before *Blakely* was decided,[9] and because *Blakely* is not available in a collateral attack under *Schardt*, Petitioner is not entitled to relief on this claim. R&R at 12 (citing *Blakely v. Washington*, 542 U.S. 296, 303 (2004); *Schardt v. Payne*, 414 F.3d 1025, 1038 (9th

---

[9] Petitioner's conviction became final on September 20, 2002; *Blakely* was decided on June 24, 2004. R&R at 12.

1 | Cir. 2005)).

**IV. Request for Evidentiary Hearing**

Finally, Petitioner has filed a motion for an evidentiary hearing. He does not identify a particular theory of relief on which he seeks an evidentiary hearing, but instead argues that the facts of his case are in dispute and that he did not receive a full evidentiary hearing in state court. Doc. #67.

In order to qualify for an evidentiary hearing, Petitioner must both: "(1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." *Belmontes v. Brown*, 414 F.3d 1094, 1124 (9th Cir. 2005)(*rev'd on other grounds Ayers v. Belmontes*, 549 U.S. 7 (2006)). Petitioner must also show that he exercised reasonable diligence in developing the factual record in the state proceedings. *Williams v. Taylor*, 529 U.S. 420, 434-37 (2000). No hearing is necessary, however, if this Court "is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial . . . ." *United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991); *see also Siripongs v. Calderon*, 35 F.3d 1308, 1314 (9th Cir. 1994) (In a capital case, a habeas petitioner who asserts a colorable claim to relief, and who has never been given the opportunity to develop a factual record on that claim, is entitled to an evidentiary hearing in federal court.). By way of example, a petitioner's "bare allegation of a conflict of interest is insufficient to entitle her to an evidentiary hearing on the question." *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991).

Based on the Court's analysis of Petitioner's various claims in this case, the Court finds that Petitioner has failed to alleged facts that, if true, would entitle him to a new trial. Therefore, the Court denies the request for an evidentiary hearing.

**V. Conclusion**

**IT IS ORDERED** that Petitioner's motion for discovery (Doc. #55), motion for appointment of counsel (Doc. #55) and motion for evidentiary hearing (Doc. #67) are denied.

**IT IS FURTHER ORDERED** that the Report and Recommendation is accepted and

- 15 -

adopted (Doc. #51), the objections are overruled (Doc. #56), the Petition in this case is denied, with prejudice, and the Clerk of the Court shall enter judgment accordingly.

**IT IS FINALLY ORDERED** that pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

DATED this 19th day of April, 2010.

James A. Teilborg
United States District Judge